**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARZBAN MODY, Petitioner, v. WARDEN, et al. Respondents. | Case No. ED CV 25-3400 FMO (RAO) **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [6]** |

On December 15, 2025, Marzban Mody ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against the Warden of the Desert View Annex; Patricia M. Colbert, Director of the Los Angeles Field Office of Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pam Bondi, U.S. Attorney General (collectively, "respondents"). (See Dkt. 1, Petition at ¶¶ 5, 12-15). Petitioner seeks an order granting his immediate release from custody, or in the alternative, an order directing the Executive Office of Immigration Review ("EOIR") to provide him with a custody redetermination hearing. (Id. at ¶ 3). The next day, petitioner filed an Ex Parte Application for a Temporary Restraining Order ("Application"). seeking the same relief requested in the Petition. (Dkt. 6, Application at 4). The court issued an order setting a briefing schedule and cautioning respondents that sanctions could be imposed if any action were taken impairing petitioner's ability to obtain complete relief. (See Dkt. 7, Court's Order of December 17, 2025).

Respondents filed their Opposition to the Application on December 19, 2025, (Dkt. 10, Opp.), and petitioner filed a reply on December 21, 2025. (Dkt. 11, Reply).

Having reviewed and considered all the briefing filed with respect to petitioner's Application, the court finds that oral argument is not necessary to resolve the Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## STATEMENT OF FACTS

Petitioner is a 59-year-old citizen of India currently detained at the Desert View Annex Detention Center in Adelanto, California. (Dkt. 1, Petition at ¶¶ 11, 16). On a date before August 31, 2010, petitioner applied for a change of status to that of "a lawful permanent resident alien." (Dkt. 2, Exh. B, Transportation Letter at ECF 16). However, before his application was processed, petitioner "had to leave [the] United States to visit India." (Id.). DHS authorized a term of "Public Benefit Parole" for seven days from August 31, 2010, which permitted petitioner to return to the United States before September 7, 2010. (Id.). Petitioner was then granted parole for one year on or around September 6, 2010. (See Dkt. 2, Exh. B, Departure Record at ECF 14); (id. at ECF 17) (reflecting that petitioner's parole would be for one year beginning with his arrival in the United States); (Dkt. 10-1, Declaration of Irving Palacios ("Palacios Decl.") at ¶ 4) ("[Petitioner] was paroled in to the United States on or about September 6, 2010.").

On July 20, 2011, petitioner pled guilty to structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3). (Dkt. 2, Exh. E, Judgment in Criminal Case at ECF 87).[1] The offense conduct had ended years earlier, in March 2004. (Id.). "During the criminal case, [petitioner] actively cooperated with the government, and the Department of Justice ('DOJ') recommended him for a no-jail sentence based on that cooperation." (Dkt. 1, Petition at ¶ 19). Accordingly, petitioner was sentenced to three years of probation and ordered to pay a special assessment of $100. (Dkt. 2, Exh. E, Judgment in Criminal Case at ECF 88, 90).

---

[1] An amended judgment was entered on September 7, 2011, apparently to modify the conditions of petitioner's probation. (See Dkt. 2, Exh. E, Judgment in Criminal Case at ECF 87).

On October 4, 2011, petitioner's parole was extended to September 5, 2012. (See Dkt. 2, Exh. B, I-94 Form at ECF 12-13). This new term of parole was evidently done under § 212(d)(5) of the of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5).[2] (See id. at ECF 13). The extension of petitioner's parole occurred on the day of his last arrival into the United States, on October 4, 2011, when petitioner was "inspected at a Port of Entry and paroled." (Dkt. 2, Exh. C, I-485 Form at ECF 20). Although petitioner worked throughout his parole, he "stayed past the validity of [his] parole[.]" (Id. at ECF 42).

Petitioner has been married to his U.S. citizen wife for approximately 27 years, and together, they have a 26-year-old U.S. citizen son. (Dkt. 1, Petition at ¶ 16). Until his detention, petitioner lived with his wife and son in Orange County, California, in a home owned by petitioner's wife. (Id.). Petitioner applied for adjustment of status to that of a lawful permanent resident based on an approved Form I-130 ("Petition for Alien Relative") filed by his wife. (Id. at ¶ 20). His Form I-485 ("Application to Register Permanent Residence or Adjust Status") was received by the U.S. Citizenship and Immigration Services ("USCIS") on April 3, 2025. (See Dkt. 2, Exh. C, I-485 Notice at ECF 46).

Petitioner attended an interview in connection with his application to adjust status on December 9, 2025. (Dkt. 1, Petition at ¶ 20). "At the adjustment-of-status interview and in the presence of [his] counsel, two officers from [ICE] arrested" petitioner. (Id. at ¶ 21). Following his arrest, petitioner's counsel "immediately filed a request for custody redetermination" with EOIR. (Id. at ¶ 22). As of the filing date of petitioner's Application, EOIR had not responded to petitioner's counsel's request. (Id.). On December 15, 2025, petitioner's counsel contacted DHS to request petitioner's release. (Id. at ¶ 23). However, DHS responded by notifying petitioner's counsel that "DHS will hold the original custody determination. You may, however, request a bond from the immigration judge." (Id.). As of the date of this Order, petitioner remains in ICE custody.

---

[2] Unless otherwise indicated, all further section references are to Title 8 of the United States Code.

Petitioner alleges that his ongoing detention without an individualized bond hearing violates both the INA and his due process rights under the Fifth Amendment. (See Dkt. 1, Petition at ¶¶ 27-32).

## LEGAL STANDARD

I. TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions or temporary restraining orders ("TRO"). See Fed. R. Civ. P. 65(a) & (b). The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)). The standards for a temporary restraining order and a preliminary injunction are the same. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same). "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter, 555 U.S. at 20, 129 S.Ct. at 374. Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge

when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

II. STATUTORY AND REGULATORY FRAMEWORK.

The court recently discussed the scope of respondents' detention authority under 8 U.S.C. §§ 1225(b) and 1226(a), and set forth the statutory and regulatory framework applicable to the issuance and revocation of parole granted pursuant to 8 U.S.C. § 1182(d)(5)(A). In the interest of expediency, the court adopts that discussion here. See Jarquin-Gadea v. Noem, et al., Case No. CV 25-2800 (Dkt. 13, Court's Order of November 17, 2025, at 6-12).

**DISCUSSION**

In his Application, petitioner argues that his continued detention without a bond hearing violates both the INA and his due process rights under the Fifth Amendment. (See Dkt. 1, Petition at ¶¶ 27-32). In his Reply, petitioner argues that he has a protected liberty interest as a result of having been previously granted parole, and that his re-detention absent notice and a hearing before a neutral adjudicator violates his due process rights.[3] (Dkt. 11, Reply at 4-7). Because the court finds petitioner's due process argument concerning his rights associated with his parole status to be dispositive, it limits its analysis to that issue.[4]

---

[3] The court gave the government an opportunity to file a sur-reply addressing petitioner's new argument to ensure that both parties were able to address its merits. (Dkt. 12, Court's Order of December 24, 2025); see Garcia v. Biter, 195 F.Supp.3d 1131, 1134 (E.D. Cal. 2016) ("[D]istrict courts have the discretion to either permit or preclude a surreply."). The government did not file a sur-reply by the deadline imposed by the court. (See, generally, Dkt.).

[4] In addition, the court need not address at length respondents' argument regarding the proper statutory authority governing petitioner's detention. (See Dkt. 10, Opp. at 9-10). However, as the court previously found, noncitizens, like petitioner, who are physically present and residing within the United States cannot be considered to be "seeking admission" as required for the application of mandatory detention under § 1225(b)(2). See, e.g., De Leon Lopez de Castro v. Noem, et al., Case No. ED CV 25-2457 (Dkt. 11, Court's Order of October 31, 2025, at 9-10); Sandoval Hernandez v. Noem, et al., Case No. ED CV 25-2563 (Dkt. 12, Court's Order of October 9, 2025, at 2, 5). Thus, petitioner's detention – and any future immigration detention to which he might be subjected – is properly governed by § 1226(a), not § 1225(b). Moreover, because the court need not reach this issue, it need not resolve whether petitioner is a member of the nationwide class certified in Maldonado Bautista v. Santacruz, 2025 WL 3713987, *32 (C.D. Cal. 2025) – a point which the parties dispute. (Compare Dkt. 10, Opp. at 9-10) (arguing that petitioner is not a class member); (with Dkt. 6, Application at 6-7) (arguing that petitioner is a class member).

I. LIKELIHOOD OF SUCCESS ON THE MERITS.

A. Respondents' Threshold Contentions.

As an initial matter, the court is not persuaded by respondents' threshold arguments that: (1) the court lacks jurisdiction over this case; or that (2) petitioner is required to exhaust his administrative remedies before seeking court intervention. (See Dkt. 10, Opp. at 4-9). First, as the court discussed in Lopez de Castro v. Noem, et al., Case No. ED CV 25-2457 (Dkt. 11, Court's Order of October 31, 2025, at 5-8), neither § 1252(g) nor § 1252(b)(9) deprive the court of jurisdiction over a petitioner's challenge to his detention. For the sake of expediency, the court adopts and incorporates the reasoning regarding §§ 1252(b)(9) and (g) as set forth in the Court's Order of October 31, 2025.

Second, under the circumstances, the court finds that waiver of any requirement to exhaust administrative remedies is warranted. Respondents have not pointed to any applicable statutory exhaustion requirement. (See, generally, Dkt. 10, Opp.). "Therefore, the Court considers whether it should require exhaustion as a prudential matter." Mosqueda v. Noem, 2025 WL 2591530, *6 (C.D. Cal. 2025). As the Ninth Circuit has explained, "courts have discretion to waive a prudential requirement." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). Specifically, courts may waive prudential exhaustion requirements if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Id. at 1001 (internal quotation marks omitted).

Here, it is clear that pursuit of administrative remedies would be futile and inadequate. As an initial matter, the administrative remedies suggested by respondents – a post-deprivation bond hearing or waiting for an immigration judge to adjudicate petitioner's adjustment of status application – cannot "provide Petitioner with the relief he seeks. This is easily demonstrated by the source of the injury alleged: Petitioner asserts that the original constitutional transgression occurred when ICE detained him on [December 9, 2025], without first making an individualized determination that he posed a flight risk or a danger to community, or any other type of process and notice that would justify the detention. Thus, the only cure to that unlawful detention is the

vacatur of detention – that is, the release of Petitioner from ICE custody." J.U. v. Maldonado, 2025 WL 2772765, *3 (E.D.N.Y. 2025).

Moreover, petitioner has already "sought review of his custody by DHS and then by an immigration judge." (Dkt. 11, Reply at 13); (see also Dkt. 1, Petition at ¶¶ 21-22). Although respondents argue that petitioner should seek further administrative review by appealing to the Board of Immigration Appeals ("BIA") (see Dkt. 10, Opp. at 8), such efforts would be futile, because respondents maintain that petitioner "is properly detained under § 1225(b)(2)[,]" which provides for mandatory detention without a bond hearing. (See id. at 2). But as respondents note, the "sole" exception to mandatory detention under § 1225(b)(2) is humanitarian parole pursuant to § 1182(d)(5)(A) – not a bond hearing. (Id. at 3). Thus, respondents' suggestion that petitioner "must proceed to seek the bond hearings available in [the § 1225(b)(2)] context," (see id. at 10), is not well taken. In short, the court waives the prudential exhaustion requirement. See, e.g., Maldonado, 2025 WL 2772765 at *3-4 (waiving prudential exhaustion requirement where detained noncitizen, who had previously been granted parole, challenged his continued detention through a habeas petition based on his procedural due process right to pre-deprivation process); Lopez Benitez v. Francis, 795 F.Supp.3d 475,496-98 (S.D.N.Y. 2025) (same); Valdez v. Joyce, 2025 WL 1707737, *1 n. 1 (S.D.N.Y. 2025) (same); Mosqueda, 2025 WL 2591530, at *6-7 (waiving prudential exhaustion requirement where detained noncitizen petitioners challenged the propriety of detention without a bond hearing pursuant to § 1225(b)); Bautista v. Santacruz, 2025 WL 2670875, *6-8 (C.D. Cal. 2025) (same).

B. Petitioner is Likely to Succeed on the Merits of His Procedural Due Process Claim.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693, 121 S.Ct. at 2500. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a

hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990).

Petitioner's procedural due process claim involves two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Fernandez Lopez v. Wofford, 2025 WL 2959319, *3 (E.D. Cal. 2025) (internal quotation marks omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). To determine what protections due process demands in a given situation, courts consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) the government's interest, including the function involved and the burdens that would be imposed by additional process. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

**1. Petitioner Possesses a Liberty Interest in Remaining Out of Custody.**

Here, petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment." Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020). While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release.'" Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (alteration marks omitted). Accordingly, "[w]hen an immigrant is placed into parole status after having been detained, a protected liberty interest may arise," and the "Due Process Clause may protect this liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections." Espinoza v. Kaiser, 2025 WL 2675785, *9 (E.D. Cal. 2025).

Respondents' decision to grant parole to petitioner in 2010, and again in 2011 pursuant to § 1182(d)(5)(A), "reflect[ed] a determination by the government that the noncitizen is not a danger to the community or a flight risk." Fernández López v. Wofford, 2025 WL 2959319, *2 (E.D. Cal.

2025) (internal quotation marks omitted). The grant of parole "constituted an implied promise that [his] liberty would not be revoked unless [he] failed to live up to the conditions of [his] release." Pinchi, 792 F.Supp.3d at 1034 (internal quotation marks omitted); see e.g., Sharif, et al. v. F. Semaia, et al., Case No. ED CV 25-2834 (Dkt. 8, Court's Order of November 26, 2025 at 2, 7-8) (finding that noncitizen petitioners who arrived to Dulles International Airport and were paroled into the country under 8 U.S.C. § 1182(d)(5)(A) gained a protected liberty interest in their release). In short, petitioner has a protected liberty interest in remaining out of custody absent a showing that he poses a risk of flight or danger.[5] See, e.g., Fernández López, 2025 WL 2959319 at *4-5 (finding that petitioner released from immigration detention on parole pursuant to § 1182(d)(5)(A) had protected liberty interest in remaining out of custody); Noori v. Larose, 2025 WL 2800149, *4, 9-10 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

That petitioner's parole may have expired when its term ended on September 5, 2012, (Dkt. 2, Exh. B, I-94 Form at ECF 12), is irrelevant because "petitioner's liberty interest did not expire along with his parole." Omer G.G. v. Kaiser, et al., 2025 WL 3254999, *5 (E.D. Cal. 2025); see, e.g., Ramirez Tesara v. Wamsley, 2025 WL 2637663, *3 (W.D. Wash. 2025) (finding, on similar facts, that "[c]ontrary to Respondents' arguments, this private interest did not expire along with Petitioner's parole agreement."). Indeed, petitioner's liberty interest is particularly strong given his initial parole in 2010 and the fact that respondents did not seek to detain him when his parole expired in 2012, more than 13 years ago.[6] See, e.g., Rodriguez Cabrera v. Mattos, 2025 WL

---

[5] Also, petitioner's liberty interest has strengthened with time and reliance. Over 14 years elapsed between petitioner's parole and his arrest on December 9, 2025. (See Dkt. 2, Exh. B, I-94 Form at ECF 12) (reflecting parole date of October 4, 2011); (Dkt. 1, Petition at ¶¶ 20-21) (alleging that petitioner was arrested on December 9, 2025). During that time, petitioner worked, paid his taxes, raised his son, and built community in this District. (See Dkt. 1, Petition at ¶ 16). The community ties established by petitioner "underscore the high stakes of [his] liberty." See Pinchi, 792 F.Supp.3d at 1033.

[6] Although petitioner pled guilty to a federal crime in July, 2011, (see Dkt. 2, Exh. E, Judgment in Criminal Case at ECF 87), the conviction predates the government's decision to extend his parole on October 4, 2011. Thus, the fact that the government granted him parole pursuant to § 1182(d)(5)(A) even after this conviction "reflects a determination by the government that the

3072687, *11 (D. Nev. 2025) (finding that petitioner's "liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."). "This conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time[.]'" Omer G.G., 2025 WL 3254999, *5 (quoting 8 C.F.R. 212.5(e)(1), (e)(2)(i)) (emphasis added). Here, respondents have not alleged that a removal order for petitioner even exists. (See, generally, Dkt. 10, Opp.). At most, Deportation Officer Irving Palacio states that "Petitioner is amendable [sic] to removal proceedings[.]" (Dkt. 10-1, Palacios Decl. at ¶ 6). But the fact "[t]hat the express terms of Petitioner's parole allowed for discretionary termination or expiration does not somehow obviate the need for the government to" comport with due process "prior to re-detaining him given the significance of his liberty interest." Rodriguez Cabrera, 2025 WL 3072687, at *11. The first Mathews factor therefore weighs strongly in favor of petitioner.

**2. Petitioner Was Entitled to Notice and a Pre-Deprivation Bond Hearing Prior to His Re-Detention.**

Under the applicable regulatory framework, petitioner's parole automatically terminated on the date it was set to expire and thus no written notice of termination was required. See 8 C.F.R. § 212.5(e)(1). But determining whether respondents provided petitioner with notice required by regulation of a pending parole termination would not resolve the question before the court, i.e., whether respondents provided petitioner with sufficient due process prior to his re-detention. See Rodriguez Cabera, 2025 WL 3072687, at *10 ("The Court finds, however, that it need not decide this statutory question to resolve Petitioner's due process challenge to his ongoing detention. The central inquiry for the Court is whether Petitioner's re-arrest and detention without the opportunity for release on bond satisfies due process."). Because § 1182(d)(5)(A)'s "enacting regulations [do

---

noncitizen is not a danger to the community or a flight risk." Fernández López, 2025 WL 2959319, at *2 (internal quotation marks omitted).

not] provide any procedure for a noncitizen to challenge the revocation or expiration of parole[,]" Rodriguez Cabera, 2025 WL 3072687, at *13, there is, in effect, no procedural safeguards to determine if re-detention is justified.

Indeed, there is no evidence that respondents employed any procedural safeguards before detaining petitioner. (See, generally, Dkt. 10, Opp.). But under the circumstances here, due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to his detention. See, e.g., Ramirez Tesara, 2025 WL 2637663, at *4 (granting TRO and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing in front of an immigration judge"); Rodriguez Cabrera, 2025 WL 3072687, at *15 (granting habeas petition where petitioner was re-detained three years after the expiration of his parole, and enjoining the government "from re-detaining Petitioner in connection with his current removal proceedings without an individualized bond hearing"); see also Valdez v. Joyce, 2025 WL 1707737, *4 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted). In short, the court finds, under the second Mathews factor, that the risk of an erroneous deprivation of petitioner's liberty interest is high. See, e.g., Fernández López, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

**3. Respondents' Interest Does Not Outweigh the First Two Factors.**

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the

community." Maldonado, 2025 WL 2772765, at *10 (internal quotation marks and alterations omitted). But respondents do not contend that petitioner was detained for such purposes. (See, generally, Dkt. 10, Opp.). Indeed, for more than 14 years, petitioner has complied with his immigration requirements, and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community. Thus, respondents have "failed to show a significant interest in Petitioner's continued detention." Maldonado, 2025 WL 2772765, at *10.

Because each of the Mathews factors favors petitioner, the court finds that he has shown a likelihood of success on the merits of his procedural due process claim.

## II. LIKELIHOOD OF IRREPARABLE HARM.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). Here, there is no doubt that petitioner has been and will continue to be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

## III. BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner. Although respondents assert that the government has a compelling interest in the enforcement of its immigration laws, (see Dkt. 10, Opp. at 10), that interest cannot justify the violation of petitioner's constitutional rights. See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's

immigration laws . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Ex Parte Application **(Document No. 6)** is **granted** as set forth in this Order.

2. Respondents shall release petitioner from immigration detention forthwith, and shall not impose any release restrictions (e.g., electronic monitoring,) on petitioner that were not in place prior to petitioner's arrest or detention in this case unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within twenty-four (24) hours of releasing petitioner.

4. Respondents shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner shall not be detained unless respondents demonstrate at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community. If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5. Given that the standard for granting a TRO and preliminary injunction are the same, Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7, the court will construe petitioner's Application as an application for a preliminary injunction ("PI Application").

6. Respondents shall file their opposition to the PI Application by no later than **January 8, 2026**. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

7. Petitioner shall file his Reply in support of her PI Application by no later than **January 12, 2026**.

8. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or take the PI Application under submission.

Dated this 5th day of January, 2026.

/s/
Fernando M. Olguin
United States District Judge